UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| $100,000.00 U.S. Currency, | § | |
| Defendant. | § | |

**VERIFIED COMPLAINT FOR CIVIL FORFEITURE
IN REM AND NOTICE TO POTENTIAL CLAIMANTS**

Plaintiff, the United States of America (the "United States"), by and through its attorney Anthony Franklyn, Assistant United States Attorney for the Southern District of Texas, files this action for forfeiture *in rem* against the above-entitled Defendant Property. The United States respectfully alleges on information and belief as follows:

JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355. The Defendant Property is located in the Southern District of Texas and is within the jurisdiction of this Court.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355, 1391(b) and 1395(a) and (b).

THE DEFENDANT PROPERTY SUBJECT TO FORFEITURE

3. The Defendant Property is described as follows: $100,000.00 U.S. Currency.

1

## POTENTIAL CLAIMANTS TO THE DEFENDANT PROPERTY

4.      This action *in rem* is filed in the United States District Court, pursuant to the provisions of 18 U.S.C. § 983(a)(3)(A), because a verified claim to the Defendant Property was submitted to the Drug Enforcement Administration on March 16, 2023, and March 20, 2023, by or on behalf of the following individuals(s):

Yousef Alsadi
c/o Leslie Sammis
1005 N. Marion Street
Tampa, FL 33602

## STATUTORY BASIS FOR FORFEITURE

5.      The Defendant Property is subject to forfeiture under 21 U.S.C. § 881(a)(6), which provides for the forfeiture of all monies furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substances Act (21 U.S.C. § 801, *et seq.*), all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate any violation of the Controlled Substances Act.

6.      This is a civil action *in rem* brought to enforce the provisions of 18 U.S.C. §981(a)(1)(C), which provides for the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to ... any offense constituting 'specified unlawful activity' (as defined in [18 U.S.C.] section 1956(c)(7) of this title), or a conspiracy to commit such offense."

7.      This action is also brought to enforce the provisions of 18 U.S.C. §981(a)(1)(B)(i), which provides for the forfeiture of "any property, real or personal, within the jurisdiction

2

of the United States, constituting, derived from, or traceable to, any proceeds obtained directly or indirectly…or any property used to facilitate such an offense…(which) involves the manufacture, importation, sale or distribution of a controlled substance (as that term is defined for purposes of the Controlled Substances Act), or any other conduct described in section 1956(c)(7)(B)."

## SUMMARY OF CASE

8. On January 19, 2023, law enforcement officers seized $100,000.00 from Yousef Alsadi ("Alsadi") at the George Bush Intercontinental Airport following a positive alert by a certified narcotics detection K-9 officer. The seizure was made by the United States Drug Enforcement Administration working with the Houston Police Department. These officers have specialized training in observing potential narcotics/money traffickers within public transportation facilities. From this training, officers of this task force have been able to determine and identify behavioral characteristics common among the normal traveler and those characteristics of persons who are narcotics/money carriers.

## FACTS OF THE CASE

9. On Thursday, January 19, 2023, law enforcement officers were working at the George Bush Intercontinental Airport in Houston, Texas. Officers were monitoring flights for possible money/narcotics couriers travelling through the airport. A certified narcotics detection K-9 officer conducted an open-air sniff of checked luggage and made a positive alert for the odor of narcotics on or about a checked bag belonging to Yousef Alsadi ("Alsadi"). The bag was intended to be placed on United Airlines Flight 2166 destined for San Francisco, California. The flight was scheduled to depart from Terminal C, Gate C-8

3

of the George Bush Intercontinental Airport. The officers recognized San Francisco, California to be a narcotics source city based on numerous prior seizures of both narcotics and U.S. Currency coming from and to this location.

10. Officers reviewed Alsadi's travel itinerary and learned that Alsadi, a Florida resident, booked a one-way flight to San Francisco, California a few hours before the flight's scheduled departure. It is common behavior for narcotics/money couriers to book last-minute one-way flights, and to then return home via a different means of transportation or carrier. Alsadi arrived late for the flight and checked the single bag.

12. A criminal history check was conducted on Alsadi and revealed a prior arrest for failure to appear in court.

13. Officers were able to locate a picture of Alsadi from law enforcement databases. Alsadi was seen heading to the gate after being paged by airline employees. It is a common behavior of narcotics/money couriers to either be the first or very last to board a plane in an attempt to avoid law enforcement interaction. All other passengers had boarded, and the flight was preparing for departure. HPD Officer Sosa and Special Agent Hernandez approached Alsadi and introduced themselves. Officers asked if they could speak with Alsadi, to which Alsadi said "yes."

14. Officer Sosa and Special Agent Hernandez informed Alsadi of the narcotics alert on his bag. Alsadi informed the officers that he had packed the bag himself and previously smoked marijuana. Alsadi then mentioned that he did not have any narcotics in his checked bag. Officers asked Alsadi if his bag contained any currency, to which Alsadi stated that he was traveling with $60,000 in his checked bag. The officers requested and were given

4

consent by Alsadi to search Alsadi's checked bag.

15.  Officers opened the checked bag and located several stacks of $100 bills housed inside of sweatshirts stored in a plastic bag. Officers informed Alsadi that the found currency appeared to exceed $60,000, and asked Alsadi to confirm the amount. Alsadi shrugged his shoulders and did not respond. It is a common behavior for narcotics/money couriers to store narcotics and/or currency inside of other items to mask the odor of narcotics and its residue from law enforcement detection.

16.  Officers again brought in a certified narcotics detection K-9 officer to first search a clear, sterile area for the odor of any narcotics. The search produced no alerts. After the K-9 officer exited the room, the currency in Alsadi's bag was placed in a clear, sterile plastic bag and hidden in the same room. The K-9 officer re-entered the area, and located and made a positive alert to the currency from Alsadi's checked bag. Based on the officers' training and experience, a positive alert to the currency indicates that 1) the currency had either been handled by someone with trace amounts of a controlled substance on their person, or 2) the currency had recently been in close proximity to a controlled substance.

17.  Officers asked Alsadi about his travel plans, to which Alsadi stated that he was going to California for a cousin's wedding the afternoon of January 19th, and that he was going to make a music video as Alsadi was a rapper. Officers noted that Alsadi's checked bag did not contain appropriate attire for his purported plans. Officers asked Alsadi to accompany them to their office, to which Alsadi consented and accompanied the officers.

18.  Once the parties arrived at the office, officers reiterated to Alsadi that he was not under arrest. Officers counted the currency and determined that the total amount was

$100,000, and not $60,000 as Alsadi previously claimed. Officers told Alsadi that they were trying to establish the origins of the currency because it was a large amount. Officers informed Alsadi that the interview regarding the currency's origin would be recorded, at which point Alsadi informed the officers that "it is not a crime to travel with money" and requested an attorney. Officers immediately terminated the interview, and asked no further questions.

19. Officers informed Alsadi that the currency found in his possession was being seized. It was explained that he would have the opportunity to dispute the seizure. Alsadi signed a Narcotic's Division Receipt for the currency seized and was provided a copy for his records. After reviewing the receipt, Alsadi stated, "I had $110,000." Special Agent Hernandez advised Alsadi that the currency was counted in front of him and totaled $100,000. Alsadi was notified that an official count would also be generated by a financial institution. Officers then assisted Alsadi with booking the next flight to San Francisco, California.

20. On January 26, 2023, Special Agent Hernandez and Houston Police Department Officers transported the currency to Loomis Armored Facility, located at 9225 Park South View, Houston, Texas. The money was counted and deposited into a United States Marshal's Service account for federal processing. The following denominations were obtained:

| Denominations | Number of Bills | Total |
| --- | --- | --- |
| $100 | 1000 | $100,000.00 |
| **Totals** | **1000** | **$100,000.00** |

21.     Special Agent Hernandez sent an administrative subpoena to several major airlines and could not locate a return flight for Alsadi. Special Agent Hernandez conducted a search for Alsadi's employment history through the Florida Workforce Commission, and no employment history was located for the last five years. Special Agent Hernandez checked for any records of large cash withdrawals from a financial institution by Alsadi on or near the January 19, 2023 seizure date, and no records were found. It is a common behavior for narcotics/money couriers to avoid using financial institutions due to the mandatory collection of information about the currency and reporting requirements of monetary transactions involving the deposit or withdrawal of currency greater than $10,000.

22.     The tax returns of Alsadi for tax year 2021 and 2022 were provided for review. Both returns were purportedly completed and filed by Alsadi on March 20, 2023, two months after the seizure, and identify Alsadi as self-employed. However, no business name, profession, or other business identifying information were included on the filings regarding Alsadi's business or occupation. Per the 2021 tax return, Alsadi did not file any taxes or claim any reportable income in the two years prior to completing the 2021 and 2022 tax returns in March 2023. The tax returns confirmed that Alsadi has an account with a financial institution with locations in both Florida and San Francisco, California, undermining the likelihood that Alsadi would otherwise be unable to access the currency but for transporting it via sweatshirts in a plastic bag. Finally, Alsadi's reported income for 2021 and 2022 do not support the existence of $100,000 in legitimate cash as claimed by Alsadi.

CONCLUSION

23. Based on the foregoing facts, there is probable cause to believe that the property seized constitutes or is derived from proceeds traceable to drug trafficking and is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) as property which constitutes or is derived from proceeds traceable to specified unlawful activity.

NOTICE TO ANY POTENTIAL CLAIMANT

YOU ARE HEREBY NOTIFIED if you assert an interest in the Defendant Property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The verified claim must be filed no later than thirty-five (35) days from the date this complaint was sent to you in accordance with Rule G(4)(b); or, if this Complaint was not sent to you, no later than 60 days after the first day of publication of notice on an official internet government forfeiture site, in accordance with Rule G(5)(a)(ii)(B).

An answer or a motion under Federal Rule of Civil Procedure 12 must be filed no later than twenty-one (21) days after filing the claim. The claim and answer must be filed with the United States District Clerk for the Southern District of Texas, either electronically or at the United States Courthouse, 515 Rusk Avenue, Houston, Texas 77002. A copy must be served upon the undersigned Assistant United States Attorney either electronically or at the address provided in this Complaint.

## RELIEF REQUESTED

The United States will serve notice, along with a copy of the Complaint, on the property owner and on any other persons who reasonably appear to be potential claimants. The United States seeks a final judgment forfeiting the Defendant Property to the United States and any other relief to which the United States may be entitled.

Respectfully submitted,

ALAMDAR S. HAMDANI

United States Attorney
Southern District of Texas

By: /s/ Anthony Franklyn
Anthony Franklyn
Assistant United States Attorney
Southern District of Texas
Federal Bar Number
Texas Bar Number 24091754
1000 Louisiana Street, Suite 2300
Houston, Texas 77002
Phone: (713) 582-4766
Anthony.franklyn@usdoj.gov

VERIFICATION

I, Cesar M. Hernandez, a Special Agent employed by the Drug Enforcement Administration, declare under the penalty of perjury, as provided by 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Civil Forfeiture In Rem and Notice to Potential Claimants, and that the facts stated in paragraphs 7-22 are based upon my personal knowledge, upon information obtained from other law enforcement personnel, or upon information I obtained in the course of my investigation, and they are true and correct to the best of my knowledge and belief.

Executed on the 14 day of June, 2023.

Cesar M. Hernandez, Special Agent
U. S. Drug Enforcement Administration